BOLIVAR MANUFACTURING COMPANY *versus* NE-
PONSET MANUFACTURING COMPANY.

Where the plaintiffs had, for more than twenty years, by means of a canal, adversely
diverted and used the water of a stream, subject to a reservation in favor of
the owners of the meadow through which the canal was cut, of the right to turn the
water down the natural channel for six weeks in each year for the purpose of getting
hay more conveniently and digging clay, it was *held*, that such reservation did not
prevent the plaintiffs from acquiring the right to divert the water by an actual use
and diversion substantially general and continuous, but operated only as a limita-
tion of the right acquired.

The presumption of a grant of an easement arising from an adverse enjoyment for
twenty years, is not rebutted by the production of an imperfect or unexecuted
agreement making a formal grant of the same easement to the party who claims
under the adverse enjoyment.

An adverse enjoyment for twenty years will establish a right to an easement, though
the party against whom it is claimed may have suffered no actual damage from
such enjoyment ; for he might have maintained an action for the invasion of his
right without proof of actual damage, as the law presumes damage when a right
is invaded.

THIS was an action on the case for the diversion of water
from the plaintiffs' mills, situated on Steep brook, in Canton,
above its junction with Mashapog brook. The defendants
owned mills on Mashapog brook below the junction of the
two streams.

At the trial, before *Shaw* C. J., it appeared, that at some
former time, a canal had been cut from Mashapog brook,
through a piece of land called the Clay meadows, to Steep
brook above the plaintiffs' mills ; that a loose dam, consisting
formerly of a log only, or a log and gravel, but recently of
plank, was placed across Mashapog brook below the canal,
so as to turn some of the water of the brook through the
canal to the plaintiffs' mills ; and that on September 3, 1833,
the defendants removed this dam and filled up the canal, so
as to turn the water down the natural channel of Mashapog
brook.

The plaintiffs introduced several witnesses, who testified,
that from 1792 to the time of the act complained of, all or
nearly all the water of Mashapog brook had been turned
through the canal to the mills of the plaintiffs, by means of
the dam ; but that it was understood by those who then owned

those mills, that the owners of the Clay meadows had a right, for six weeks in each year, to turn the water off the meadows down the natural channel of Mashapog brook, in order that the meadow owners might more conveniently get their hay and dig clay. It did not appear, that the water was turned down the natural channel of Mashapog brook for so long a time as six weeks in each year; but that this was done at such times as the meadow owners chose to do it in each year, from June to October inclusive. Nor did it appear, that the former owners of the mills of the defendants had any connexion with the meadow owners. The canal was occasionally cleared out, and the dam kept in repair, by the owners of the plaintiffs' mills.

The defendants introduced several witnesses, who testified, that at different times and for many years between 1813 and the time when the act complained of was committed, the owner of a mill on Mashapog brook below the canal and dam, but above the junction of the two streams, had at his pleasure and under a claim of right, removed the dam when he wanted more water, and that the dam was restored, from time to time, by the then owner of the plaintiffs' mills.

The owners of Clay meadows, and other persons who had worked in them, testified, that such owners had always turned the water off the meadows for the purpose of getting their hay and digging clay more conveniently, at such times in each year as they had thought fit; that they never knew of any restriction on their right as to time; that they had done this in different months from June to October inclusive, when they had chosen to get their hay or dig clay; but they did not state that for so much as six weeks in each year had the water been turned off the meadows, nor for how long a time in each year this had been done. There was also evidence tending to prove, that the water had at some times been clandestinely turned down the natural channel from the meadows.

It was also testified, that in consequence of the water being turned over the meadows, it came more irregularly and inconveniently to the mills of the defendants, and that a consid erable portion of it, by being absorbed and evaporated, was lost to the defendants; and that in order to prevent this loss,

when the water in the stream was low, they had directed their agents to turn the water down the natural channel.

To rebut the presumption of a grant of the right to divert the water into the canal, the defendants produced a deed between Elijah Crane, under whom the plaintiffs claim, and Lemuel Gay, Jesse Peirce, and three others, who were meadow owners, by which it was agreed that a dam should be built on Mashapog brook and that a ditch should be dug, so as to turn the water which ran down that brook across the Clay meadow, into Steep brook, above Crane's mills.   This deed was dated in October 1792, but it was found in the possession of a son of Gay so late as 1830, executed by Peirce and Gay only, and it was then lent by Gay's son and soon afterwards it was returned to him, having in the mean time been signed by Crane ; but Crane had previously ceased to be the owner of the mills owned by the plaintiffs.   It was never executed by the other parties named in it.   It was recorded after the action was brought.

Another deed was in the case, dated in August, and recorded in September, 1799, from Jesse Peirce to Thomas Shepard, of certain land, "reserving to Lemuel Gay and Elijah Crane the right of turning the water out of Mashapog brook in the above granted premises, in the same place where it now runs, agreeable to the covenant and agreement made by and between the abovenamed Jesse Peirce, Lemuel Gay, and Elijah Crane."  This contract was recorded after the action was brought.

The jury were instructed, that an adverse, notorious and undisputed enjoyment of a particular mode of using the water by diversion or obstruction, for the term of twenty years, constituted, in presumption of law, evidence of a valid grant of the privilege of so using it, and that the production of an imperfect or unexecuted agreement for the same privilege, did not rebut or control this presumption.

The jury were further instructed, that, if the plaintiffs and those under whom they claim, had enjoyed the use of the water diverted, subject to the reservation in favor of the meadow owners, for a particular portion of time in each year, or for a particular purpose, as to get hay, or dig clay,

Bolivar
Manuf. Co.
*v.*
Neponset
Manuf. Co.

such reservation did not prevent the acquisition by the plaintiffs of a right to divert the water, as against those who had no interest in the reservation, provided the actual use and enjoyment of the right of diversion, was substantially general and continuous, but that it operated only as a qualification of the right acquired. It was therefore left to the jury to consider, upon the evidence, whether the use and enjoyment of this easement was substantially a general and continuous use and enjoyment, subject to a well defined and limited exception and reservation; if it was, such a use and enjoyment were evidence of a right subject to such exception and reservation. But if it appeared that the exceptions were so extensive, and the use of the privilege by Crane and his successors was so casual and uncertain, that their use and enjoyment could not be deemed general and continuous, then as against the defendants and all other proprietors on the same stream, such a casual and interrupted use would found no claim of right.

A verdict was returned in favor of the plaintiffs, which was subject to the opinion of the whole Court upon the questions of law arising from the instructions, and upon the question, whether the evidence was sufficient to support the verdict.

*Oct.* 28*th.*    *Hoar*, *Cushing*, and *Tolman*, for the defendants. The presumption of a grant of the right to divert the water, was rebutted by the production of the unexecuted agreement between Crane and Gay and Peirce, under which this usage grew up. The right could be obtained only by grant, actual or presumed, and if the grant is disproved, the right is disproved. *Campbell* v. *Wilson*, 3 East, 294; 3 Stark. on Evid. 1218. This usage was not adverse and continuous, and definite, and therefore could not raise a legal presumption of a grant. The water was not diverted by the plaintiffs in summer, when, only, a diversion of the water would be injurious to the defendants; the defendants could not therefore object, so long as the damage occasioned by such diversion was merely theoretical. *Daniel* v. *North*, 11 East, 370.

*Metcalf* and *Mann*, for the plaintiffs, to the point, that the plaintiffs' enjoyment was adverse, since if the defendants'

ght was invaded, they might have brought an action, although they had suffered no actual damage, cited *Hobson* v. *Todd*, 4 T. R. 71 ; *Pindar* v. *Wadsworth*, 2 East, 158 ; *Pastorius* v. *Fisher*, 1 Rawle, 27 ; to the point, that the right to divert the water, was susceptible of limitation or qualification, and that although there might be a variation in the time required to get the hay or dig clay, this would not affect the plaintiffs' rights, they cited *Strutt* v. *Bovingdon*, 5 Esp. N. P. 56 ; *Bateson* v. *Green*, 5 T. R. 411 ; as to the position of the defendants, that the right could be obtained only by grant, they cited *Tyler* v. *Wilkinson*, 4 Mason, 397, 401 ; *Corbett* v. *Barker*, 1 Anstruther, 143 ; *Hillary* v. *Waller*, 12 Vesey, 264.

WILDE J. delivered the opinion of the Court. The defendants move for a new trial, on account of a supposed misdirection to the jury, and because the evidence reported does not support the verdict.

The plaintiffs proved, by undisputed testimony, that from the year 1792, to the time of the act complained of, they, and those under whom they derive their title, have claimed and enjoyed the privilege of diverting water by a trench or canal from Mashapog brook to Steep brook above their mills, without any interruption on the part of the defendants, or of those from whom they claim. But it was proved, that the owners of the Clay meadows, through which the canal was cut, had the right to turn the water off the Clay meadows down the natural channel of the Mashapog for the purpose of enabling them more conveniently to get their hay, and to dig clay in the meadows, for the space of six weeks annually between the months of June and October. On this evidence, the jury was instructed, that if the plaintiffs and those under whom they claim, had enjoyed the use of the water diverted, subject to the reservation in favor of the owners of the meadows for a particular purpose, as to get hay or dig clay, and for a limited time, such reservation did not prevent the acquisition of a right to divert the water, but operated only as a qualification or limitation of the right acquired ; of which no one could take advantage, but those having an interest in the reservation or limitation, provided the actual use and en

joyment of the right of diversion was substantially general and continuous ; and that this direction to the jury was substantially correct, we cannot entertain a doubt. And it seems equally clear, that if the plaintiffs' title be in other respects well founded, the evidence fully supports the verdict. Indeed, if the jury had found for the defendants on this point, the verdict would have been manifestly against the evidence, or the direction of the court. The defendants derive no right from the owners of the meadows, and they had no more right to disturb the plaintiffs in their enjoyment of a qualified, than of an unqualified easement or prescriptive right.

Then it was objected, that there was sufficient evidence to rebut the presumption of a grant, arising from the inchoate agreement between Crane and Gay and others ; but as this agreement was not executed by Crane until after he had sold out, it is manifest it could not rebut any presumption arising from use and occupation. Before the deed or agreement was executed, it had no binding force, and the use and enjoyment cannot be referred to that unexecuted agreement, and so the jury were instructed.

The evidence also shows, that the use and enjoyment of the water diverted was uninterrupted for more than twenty years, qualified, as it was, by the occasional turning of it away by the owners of the meadows. After the lapse of twenty years, in 1813, it appears that the owner of a mill, above the defendants' mill, on Mashapog brook, did interrupt the plaintiffs in the enjoyment of their easement, under a claim of right; but this fact is immaterial, because the plaintiffs' right was then, if ever, complete, and they did not acquiesce in the interruption, but continued to assert their right. And besides, there is no connexion between the defendants and the owner of the upper mill.

The remaining question is, whether the plaintiffs' use and enjoyment was adverse, and we think it clearly was.

It is objected, that the owners of the meadows turned the water into the natural channel in the dry part of the season each year, and by that means the defendants suffered no damage. The evidence, however, does not show this. On the contrary, the evidence shows, that the owner of the

upper mill was in want of water repeatedly. But if the defendants did not suffer any actual damage, it would be of no importance in this case ; for the plaintiffs' claim was adverse to theirs, and they might have maintained an action without proof of actual damages, if the plaintiffs had no right to divert the water. The law presumes damage when a man's right is invaded, and if one suffers his rights to be invaded, and acquiesces in an adverse claim for more than twenty years, it is quite unimportant whether he suffers any actual damages or not. *Hobson* v. *Todd*, 4 T. R. 71.

And considering the whole evidence, we think it manifest, that the jury had a right to presume a grant of the right in question to the plaintiffs, and that the verdict is right.

*Judgment according to verdict.*